**SIGNED THIS: May 9, 2018**

_____

**Thomas L. Perkins
United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| NANCY L. BELLEVILLE, | ) | **Case No. 12-82426** |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| JOHN W. ANASTASOFF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **Adv. No. 16-8041** |
| | ) | |
| NANCY L. BELLEVILLE, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>OPINION</u>

This matter is before the Court on cross-motions for summary judgment. The issue

concerns the nondischargeability of a money judgment entered by an Arizona divorce court in

favor of John Anastasoff and against Nancy Belleville, the debtor in the above-referenced

Chapter 7 bankruptcy proceeding filed in the United States Bankruptcy Court for the Central

District of Illinois.

   Prior to 1994, Mr. Anastasoff and Ms. Belleville were married, had children together

including a daughter, Savannah, and were residing in Mohave County, Arizona. In 1994, Ms.

Belleville filed for a divorce in the Superior Court of Arizona for the County of Mohave. In

1996, the parties agreed to the terms of custody and visitation, with Ms. Belleville having

custody of Savannah and Mr. Anastasoff having visitation rights.

   Thereafter, substantial litigation occurred in the Arizona divorce proceeding concerning

the issues of custody, support and visitation with respect to Savannah, and in particular whether

Ms. Belleville was wrongfully preventing Mr. Anastasoff from exercising his visitation rights

with Savannah. The parties have submitted a selection of pleadings and orders entered in the

divorce case in 2005, 2006 and 2007. A brief summary of those documents follows.

   On June 8, 2005, Judge Gurtler heard evidence on the issue of the enforcement of Mr.

Anastasoff's visitation rights with Savannah. In a minute order, he made a finding that Ms.

Belleville had willfully, intentionally and maliciously interfered with Mr. Anastasoff's parenting

time and visitation rights, and found Ms. Belleville to be in contempt of court. He set a specific

visitation schedule that Ms. Belleville was ordered to comply with in order to purge the contempt

finding. He further ordered that Ms. Belleville was to pay 100% of all visitation costs. He further

ordered that should Ms. Belleville not comply with the court's order and purge the contempt, that

custody of Savannah would be awarded to Mr. Anastasoff and Ms. Belleville would then be

required to pay child support in the amount of $268 per month. A written order to this effect was

entered by Judge Gurtler on June 10, 2005. Judge Gurtler's minute order further reflects that Mr.

Anastasoff was awarded attorney fees and costs of $4,000 as well as a credit for overpayment of child support of $1,528.

A number of other hearings were held and orders entered in the divorce case during the latter half of 2005 and through 2006, dealing with the issues of Mr. Anastasoff's visitation rights with Savannah, the potential change of custody, and the issue of child support payments. Mr. Anastasoff's attorney filed a petition on December 12, 2006 reciting the history of the litigation over this time period, alleging that Mr. Anastasoff had still not seen Savannah "for years," and seeking an additional award of attorney fees and costs.

On March 5, 2007, Judge Gurtler held another hearing on the issues of custody, visitation and support at which Savannah testified. In an order filed on March 13, 2007 he determined that Ms. Belleville had withheld visitation from Mr. Anastasoff and "that the loss of the ability to parent and have a relationship with the child as a direct result of the conduct of the petitioner," Ms. Belleville, "is a sufficient basis in and of itself to change custody." He found Ms. Belleville to be in contempt of court for withholding visitation. Judge Gurtler ordered that the parties were awarded joint legal custody of Savannah, and further ordered that Savannah would return to the State of Arizona beginning March 30, 2007, whereupon Mr. Anastasoff would have primary physical custody through the end of the summer break. He further ordered that there would be no child support paid by either party. And finally, he ordered Mr. Anastasoff's attorney to file an affidavit for attorney fees and costs which the court would then take under advisement along with a request for reimbursement of certain expenses.

One week later, on March 20, 2007, Judge Gurtler entered an order awarding attorney fees and costs to Mr. Anastasoff in the amount of $18,000 along with reimbursement of expenses

in the amount of $2,212, entering a judgment in favor of Mr. Anastasoff and against Ms.

Belleville for those amounts, with interest to accrue upon any unpaid balance at 10% per annum.

Shortly thereafter, on April 9, 2007, Judge Gurtler entered another written order entitled

"order re custody, visitation, child support, contempt, and costs." The order refers to the same

evidentiary hearing previously held on March 5, 2007. The April 9 order contains findings that

the "orders herein are appropriate and are in Savannah's best interest." It also finds Ms.

Belleville to be in contempt of court for her continued violation of the visitation orders, that

sanctions are appropriate in the form of attorney fees and for reimbursement of Mr. Anastasoff's

expenditures, as well as the possibility that the court might issue a bench warrant for Ms.

Belleville should she continue to refuse to comply with the court's orders.

The April 9 order repeats the award of joint legal custody of Savannah and goes on to

recite a very specific schedule that is to be followed with respect to the joint custody through the

remainder of 2007. The order provides that the parties are to share Savannah's travel expenses

equally. It also provides as follows: "Neither party shall pay child support to the other. Any child

support order to the contrary is hereby vacated." Finally, the order directs Mr. Anastasoff's

attorney to prepare an affidavit and application for attorney fees for the court to consider along

with the previously submitted accounting of funds expended by Mr. Anastasoff, for the court to

"determine an appropriate sanction for petitioner's misconduct."

Months later, on December 11, 2007, the Arizona court heard arguments on Mr.

Anastasoff's motion to offset the balances due between the parties. The judge on this occasion

was Michael Burke. Judge Burke entered an order on December 26, 2007 that states that he

reviewed the file, including past judgments awarded to Mr. Anastasoff by Judge Gurtler, as well

as the accountings provided by Mr. Anastasoff, as well as the latest calculations of child support

4

arrears and interest owed Ms. Belleville by Mr. Anastasoff. The order determines that Ms.

Belleville owed Mr. Anastasoff the sum of $29,681, consisting of the judgment amount of

$20,212 previously entered on March 20, 2007, interest through December 1, 2007 of $1,567,

unreturned child support paid by Mr. Anastasoff, attorney fees in the amount of $4,625 and court

costs of $90.

Judge Burke's order determined that Ms. Belleville was due the sum of $10,189.08 for

past child support and interest. The order nets out the offsetting amounts resulting in a net

amount due Mr. Anastasoff from Ms. Belleville of $19,491.92. The order awards "final

judgment" in that amount in favor of Mr. Anastasoff with interest to accrue at 10% per annum. It

is this judgment entered December 26, 2007 for which Mr. Anastasoff is seeking a determination

of nondischargeability.

**ANALYSIS**

Section 523(a)(5) of the Bankruptcy Code excepts from discharge any debt for a

domestic support obligation. As set forth in section 101(14A) of the Bankruptcy Code, the

definition of "domestic support obligation" requires that four elements be established with

respect to a debt in order for it to be determined that the debt is a domestic support obligation.

The only element challenged by Ms. Belleville is whether the Arizona judgment is "in the nature

of support" of Savannah. The other elements are conceded.

In her motion for summary judgment, Ms. Belleville contends that attorney fees may be

determined to be in the nature of support only if the proceedings in which the attorney fees were

incurred involve, at least in part, the issue of child support payments. She contends that the

issues before the Arizona court that resulted in the judgment entered on December 26, 2007

involved only issues of visitation or parenting time, not child support payments, so that the

judgment should not be considered to be in the nature of support. Ms. Belleville relies upon

*Adams v. Zentz*, 963 F.2d 197 (8th Cir. 1992) and this Court's decision in *In re Hudson*, 2007

WL 4219421 (Bankr. C.D. Ill.).

*Adams v. Zentz* is the first of several circuit court opinions that address the issue of the

dischargeability of attorney fee awards in divorce cases resulting from litigation over child

custody and visitation. Like the case at bar, *Adams v. Zentz* involved a divorce proceeding where

the mother of a child sought to frustrate the father's exercise of his visitation and custody rights.

Litigation ensued over a three-year period resulting in the court ordering the mother to pay the

father $7,500 for his attorney fees. When the mother filed for bankruptcy relief, the father filed a

nondischargeability complaint under section 523(a)(5) alleging that the debt was in the nature of

support. The bankruptcy court rejected the father's arguments and ruled that the debt owed by

the mother was dischargeable. Taking a narrow view of "nature of support," the bankruptcy court

concluded that the attorney fees were not related to the financial support of the child, and that the

custody battle was unrelated to the child's health and welfare so that the fees could not be

characterized as support. Applying a *de novo* standard of review, the district court reversed the

bankruptcy court, reasoning that application of section 523(a)(5) only to debts arising from the

direct financial support of a child is an unrealistic and overly narrow construction of the statute.

On further appeal, the Eighth Circuit reversed the district court, determining that it had

applied an improper standard of review, holding that whether an award should be characterized

as maintenance or support is to be determined by the function the award was intended to serve,

which is a question of fact to be decided by the bankruptcy court. Therefore, the district court

was required to accept the findings of the bankruptcy court on this issue unless those findings

were clearly erroneous. The Eighth Circuit held that the bankruptcy court did not clearly err in

finding that the mother's debt to the father was not in the nature of support. The court went on to

acknowledge, however, that the record might plausibly be read to support a finding consistent

with the conclusion reached by the district court, but because either conclusion was plausible, the

court could not say that it was definitely and firmly convinced that the bankruptcy court's

findings were clearly erroneous.

The issue was next addressed at the circuit court level in *In re Jones*, 9 F.3d 878 (10th

Cir. 1993). In the underlying divorce action, the father had full-time custody of the two minor

children and the parties shared expenses equally. When the mother moved to modify custody,

litigation ensued, the mother's motion was denied, and she was ordered to pay all court costs and

attorney fees incurred by the father in defending the motion in the amount of $6,000. After she

filed for bankruptcy relief, the bankruptcy court determined that the debt was dischargeable,

reasoning that a custody action is separate from a support action and, therefore, is not excepted

from discharge under section 523(a)(5).

The district court reversed, holding that the determination of child custody is essential to

the children's proper "support" and that attorney fees incurred in custody modification

proceedings should likewise be considered as obligations of support. The Tenth Circuit affirmed

the district court, noting that the issue is one of federal law, not state law. The Tenth Circuit

rejected the Eighth Circuit's reasoning in *Adams v. Zentz*, specifically rejecting the Eighth

Circuit's directive that the bankruptcy court must look at the purpose behind the custody action

and examine whether that action was necessary or intended to determine the best interests of the

child. In the Tenth Circuit's view, in all custody actions, the court's ultimate goal is the welfare

of the child. The court further reasoned that the best interests of the child is an inseparable

element of the child's "support" as that term is used in section 523(a)(5), and that the term

should not be read so narrowly as to exclude everything bearing on the welfare of the child

except the bare paying of bills on the child's behalf. The Tenth Circuit held that the term

"support" as used in section 523(a)(5) is entitled to a broad application and should generally be

applied to encompass the issue of custody. Accordingly, court-ordered attorney fees arising from

custody litigation are deemed to be in the nature of support under section 523(a)(5) as being

incurred on behalf of or for the benefit of the child.

Employing similar reasoning in *Matter of Dvorak*, 986 F.2d 940 (5th Cir. 1993), the Fifth

Circuit held that a debtor mother's obligations to pay the attorney fees incurred by her daughter's

guardian ad litem and by the attorney for the daughter's father in state court custody litigation

were nondischargeable as support. The court reasoned that because a child custody hearing is

clearly for the child's benefit and support, attorney fees related to the issue of custody are

nondischargeable under section 523(a)(5).

The issue of dischargeability of attorney fee awards in divorce court proceedings relating

to child custody has been recently addressed by the Seventh Circuit Court of Appeals in *In re

Trentadue*, 837 F.3d 743 (7th Cir. 2016). The Trentadues were divorced in 2007 and were given

joint custody of their six children. The arrangement proved unworkable and resulted in

protracted litigation over custody and child support. The Wisconsin divorce court determined

that Mr. Trentadue had been excessively litigious and awarded Mrs. Trentadue $25,000 in

attorney fees to be paid by Mr. Trentadue directly to his ex-wife's attorney. Instead of making

the payment, Mr. Trentadue filed a chapter 13 bankruptcy petition. The ex-wife's attorney filed a

claim for $25,000 classifying it as a nondischargeable domestic support obligation entitled to

priority status. Mr. Trentadue objected that the fee award was imposed as a punishment and

therefore could not be a domestic support obligation. The bankruptcy court determined that the

8

obligation did qualify as a domestic support obligation, the district court affirmed, and on further appeal, the Seventh Circuit affirmed.

The Seventh Circuit noted that the bankruptcy court, in its written opinion, determined that the attorney fee award was not a punishment but was instead meant to compensate for the harm that Mr. Trentadue had done to the children in the form of an expensive custody litigation that would have a negative financial and emotional impact on them. The Seventh Circuit also noted that every circuit that has confronted the issue has recognized that attorney fee awards may constitute "support" under the bankruptcy code, which is a question of federal bankruptcy law. Employing a functional approach, however, the Seventh Circuit looked for guidance to the intent of the state court in rendering its judgment and fee award.

The Seventh Circuit drew an inference from the facts in the record relating to the divorce court proceeding that the state court's intent in ordering the fee award was to ensure that its child support award was not negated by the large amount of attorney fees incurred by Mrs. Trentadue that were necessitated by Mr. Trentadue's "scorched-earth approach" to the litigation. Moreover, by calculating that Mrs. Trentadue incurred $49,575 in attorney fees and ordering Mr. Trentadue to pay one-half of those fees, demonstrated the restorative nature of the divorce court's award and the effort undertaken by it to further ensure that the children were not harmed by Mr. Trentadue's actions. The court reasoned that splitting Mrs. Trentadue's attorney fees in half "has all the hallmarks of a compensatory award meant to put Trentadue's wife and his children in the same place they would have been had he not pursued his overly litigious course," and, further, if the state court award were truly punitive, it would have imposed a fee separate and unrelated to his wife's legal fees to be paid to the court.

9

Mr. Trentadue argued that not only was the fee award meant purely to punish him, but that the state court's order concerned only issues relating to educational and medical decision-making, not custody. Since the state court's order did not limit the issues as such, the Seventh Circuit refused to draw that conclusion. The Seventh Circuit determined that the fee award was intertwined with issues related to financial support, including child support and health insurance, inferring that the state court was taking a holistic view of the couple's financial position. In the Seventh Circuit's view, the fact that the fee award was payable in a lump sum, supported the inference that the state court was recognizing that Mrs. Trentadue would not be able to afford to pay a $50,000 legal bill, thus factoring in her financial circumstances. The Seventh Circuit concluded that the bankruptcy court had committed no error in finding that the state court intended to remedy the financial harm caused by Mr. Trentadue's conduct, and that the fee award was properly determined to be in the nature of support. Significantly, the Seventh Circuit found *Adams v. Zentz* to be inapposite.

In *In re Hudson*, 2007 WL 4219421 (Bankr. C.D. Ill.), this Court determined an attorney fee award made by a divorce court in a custody dispute was a nondischargeable domestic support obligation, recognizing the general principle that attorney fee awards are usually deemed to be in the nature of support when those fees are "inextricably intertwined with proceedings affecting the welfare of a child." Where custody of a child is at issue, the court's ultimate concern is the welfare of the child, so that fees awarded in custody disputes should be considered to be in the nature of support absent exceptional circumstances to the contrary. This Court did not address in *Hudson*, however, the issue at bar which is whether fees awarded in divorce court proceedings dealing primarily with parental visitation rights are in the nature of support.

In large part, this issue turns on whether the term "in the nature of support of a child of the debtor," as used in section 101(14A), should be construed broadly to include nonfinancial interests of the child. This Court agrees with the majority of courts that have given the statute a broad application and with the reasoning of the Tenth Circuit in *In re Jones*, that the bankruptcy court must look at the underlying purpose of the litigation that occurred in the divorce court and examine whether the litigation involved issues concerning or related to the interests of the child. The Tenth Circuit held that the issue of custody of the child should be considered to be in the nature of support even where the issue of custody did not also concern the financial support of the child. The Fifth Circuit in *In re Dvorak* also held that since custody is clearly for the child's benefit and support, the attorney fees related to the issue of custody are nondischargeable under section 523(a)(5). This Court agrees with the Tenth and Fifth Circuits.

Given that attorney fees incurred in custody litigation have been held to be in the nature of support of the child, it is difficult to see how attorney fees relating to visitation rights could be categorized any differently. Custody determines with whom the child will reside and whether custody is full-time with one parent or shared jointly. The issue of visitation rights determines the circumstances, terms and conditions under which the noncustodial parent is entitled to spend time with the child. The purpose of visitation rights is to ensure that the noncustodial parent and the child maintain a relatively normal parent – child relationship. Maintaining such a relationship is clearly in the best interests of the child and directly concerns the nonfinancial welfare of the child. Treating issues of visitation the same as issues of custody for domestic support obligation purposes is the sensible approach and the one that most courts have adopted. See *In re Elkin,* 2012 WL 5844970 (Bankr. S.D. Fla.); *In re Stella,* 2008 WL 5101449 (Bankr. S.D. Ind.); *In re*

*Ray,* 143 B.R. 937, 940 (D. Colo. 1992); *In re Peters,* 133 B.R. 291, 295 (S.D.N.Y. 1991) *aff'd,* 964 F.2d 166 (2d Cir. 1992).

The fact that Ms. Belleville was found to be in contempt by the divorce court does not change the result, given the record before this Court. The divorce court records indicate that in conjunction with the issue of Mr. Anastasoff's visitation rights, the court was also dealing with the issues of custody and child support. Custody was, in fact, changed by the order entered March 13, 2007, which also addressed the issue of child support. The order entered April 9, 2007, specifically refers to custody and child support, in addition to contempt and costs, and makes a finding that the relief granted is "in Savannah's best interest." Generally, where attorney fees are awarded on a contempt motion, courts nevertheless examine whether the disputed issues dealt with the child's best interests or welfare, in which case the fees are usually determined to be "inextricably intertwined with proceedings affecting the welfare of the child" and, as such, are in the nature of support. See *In re Stella, supra,* at *3.

When Judge Burke became involved in December, 2007, and entered the final judgment that is the subject of this adversary proceeding, the matter came before him not on the issue of contempt or sanctions, but on Mr. Anastasoff's motion to offset the balances due between the parties. Judge Burke performed an accounting function, calculating the various amounts due Mr. Anastasoff and deducting from that sum the amount of $10,189.08 for past due child support and interest that Mr. Anastasoff owed Ms. Belleville. Judge Burke's judgment was primarily a financial reconciliation of Judge Gurtler's prior orders that did not make any new determination of contempt by Ms. Belleville.

The fact that the Arizona divorce court judgment was payable directly to Mr. Anastasoff and not to the court or the circuit clerk is an indication, as recognized by the Seventh Circuit, that

the state court award was not truly punitive. Since the fee award was intertwined with issues of child support, custody and visitation, it may also be inferred that the Arizona court was taking a holistic view of the issues litigated by Ms. Belleville and Mr. Anastasoff, all in the context of what was best for Savannah. A determination that Judge Burke's judgment in favor of Mr. Anastasoff is in the nature of support is consistent with the decisions of the Seventh, Tenth and Fifth Circuits discussed herein.

For the foregoing reasons, this Court holds that the judgment entered by the Arizona divorce court on December 26, 2007, in favor of Mr. Anastasoff and against Ms. Belleville in the amount of $19,491.92 is in the nature of support and, as such, is nondischargeable under section 523(a)(5). It is not necessary to address the other issues and alternative arguments raised by the parties. Summary judgment will be entered in favor of Mr. Anastasoff and against Ms. Belleville.

This Opinion constitutes this Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure. A separate judgment order will be entered.

# # #